c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROBERT C. PAUL, Plaintiff | CIVIL ACTION NO. 1:17-CV-00949 |
| VERSUS | JUDGE TRIMBLE |
| CHRISTUS SAINT FRANCES CABRINI HOSPITAL, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is the civil rights complaint (42 U.S.C. § 1983), as amended on August 11, 2017 (Doc. 8), of pro se Plaintiff Robert C. Paul ("Paul"). Paul was granted leave to proceed *in forma pauperis*. (Doc. 9). Paul also filed a Motion for Extension of Time Without Attorney of Statute of Limitation to Serve (Doc. 5), and a Motion Without Attorney to Have USM Serve Complaint and Summons (Doc. 6).

Paul, a nonprisoner, seems to premise his Complaint on alleged civil rights violations in relation to medical treatment he received on or about July 22-23, 2014. (Doc. 8). Paul names as Defendants Christus Saint Frances Cabrini Hospital, Nancy Hellyer, CEO ("Cabrini"); Dr. Anthony Pruett ("Pruett"); the State of Louisiana, Governor, Jon Bel Edwards ("State of Louisiana"); Commissioner of Administration, Jay Dardene ("Dardene"), Medical Review Panel ("MRP") ("Defendants"). (Doc. 8). Paul claims Dr. Pruett committed fraud in diagnosing him with a "contusion-no broken bone." (Doc. 8).

1

Paul alleges medical malpractice against Cabrini and Dr. Pruett. (Doc. 8). Paul claims Cabrini and Dr. Pruett gave a fraudulent diagnosis and dumped him as a patient on July 23, 2014. (Doc. 8). Paul claims he received no treatment beyond a pain shot of Toradol and Keterolac. (Doc. 8). Paul claims the State of Louisiana through "Protectionism Legislation" violated his civil rights by denying access to the court system as medical malpractice recovery is so low no attorney will take his case. (Doc. 8). Paul alleges MRP is an "Elitist Group" developed to put themselves above the law and engage in egregious protectionism to doctors and hospitals. (Doc. 8). For the following reasons, Paul's claims should be DISMISSED as frivolous.

I.  **Background**

On July 22, 2014, Paul fell off his Trek bike and was injured. (Doc. 8). He was taken by ambulance to Cabrini. (Doc. 8). Paul claims he arrived in the Emergency Room ("ER") at 11:10 p.m. (Doc. 8). Cabrini took X-rays of his shoulder and clavicle areas. (Doc. 8). The ER doctor was listed as Dr. Pruett. (Doc. 8).

Paul claims that whoever read the X-rays and reported findings to Dr. Pruett "had to have been blind" to not see he had a severely broken clavicle. (Doc. 8). Paul claims Dr. Pruett ignored "the broken clavicle with separation of the sterno-clavicular half of the broken clavicle elevated approximately 25-30% above the level position of the right shoulder." (Doc. 8). Paul states Dr. Pruett told him "he was dismissing ('Dumping') [him] from Cabrini" and that he had "a very bad contusion but no broken bone." (Doc. 8). Paul alleges that every part of Dr. Pruett's summary medical report contains this "fraud," and that he was "[d]umped" on July 23, 2014 at 3:29 a.m. "with

2

no treatment beyond a pain shot of Toradol IMJ [sic] and an injection of Ketorolac INJ." (Doc. 8).

Paul claims his clavicle should have been surgically repaired immediately, and that he has reports to back up that statement. (Doc. 8). He states he followed up with his primary care physician, Dr. Thomas, who examined his shoulder and clavicle. (Doc. 8). He claims this exam was five days later, as Dr. Thomas did not allow him to see her on an emergency basis. (Doc. 8). Paul claims Dr. Thomas made him an appointment with Mid-State Orthopedic and Sports Medicine for X-rays, and an MRI. (Doc. 8). He states he was unable to get in sooner and was seen an additional 17 days or collectively over 3 weeks later. (Doc. 8). He claims during that time there were "more and more bone cells pouring out to do repairs." (Doc. 8). Paul states "[w]hen I had the chance to view their X-rays I knew Cabrini had done an extremely egregious false diagnosis on me." (Doc. 8).

Paul now seeks recovery for "Reconstruction, the Recovery Process, and the Rehab Process," for both his clavicle and shoulder damage from the accident, and Cabrini's refusal to medically repair the damages. (Doc. 8). Paul seeks censure of "their License by the Medical Examiners that License them to operate," and therefore has included the State of Louisiana and MRP. (Doc. 8). Paul claims "both entities hide under 'Immunities to Prosecution' that they should not have." (Doc. 8).

Paul claims he filed an MRP Request, signed by him on July 21, 2017. (Doc. 1-2). It appears Paul's MRP Request is pending. Paul's MRP Request states that Cabrini allowed fraud in allowing patient dumping. (Doc. 1-2). Paul's MRP Request

alleges Dr. Pruett made an intentional fraudulent wrong diagnosis that created gross harm to Paul through refusal to repair a broken clavicle plus damages to his right shoulder. (Doc. 1-2). Paul alleges the State of Louisiana has allowed medical malpractice negligence and intentional fraudulent statements of diagnosis "through protectionist laws to doctors and hospitals." (Doc. 1-2). Paul's MRP Request also alleges Jay Dardene – Commissioner of Administration, MRP has no genuine concern of harm done to patients, their sole business being protectionism to doctors and hospitals regardless of the gross harm to patients. (Doc. 1-2).

## II. Law and Analysis

### A. Paul's Complaint is subject to screening under 28 U.S.C. § 1915(e).

Because he has been allowed to proceed *in forma pauperis*, Paul's Complaint is subject to screening under § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the Complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Section 1915(e)(2)(B) applies equally to prisoner as well as non-prisoner *in forma pauperis* cases. See Newsome v. Equal Employment Opportunity Commission, 301 F.3d 227, 231–33 (5th Cir. 2002) (affirming dismissal of nonprisoner claims for frivolity and failure to state a claim under § 1915(e)(2)(B)(i) and (ii)); Cieszkowska v. Gray Line New York, 295 F.3d 204, 205-206 (2nd Cir. 2002) (affirming dismissal of *in forma pauperis* non-prisoner case for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)).

4

A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." Nietzke v. Williams, 490 U.S. 319 (1989). A claims lacks an arguable basis in law when it is "based on indisputably meritless legal theory." Id. at 327. While district courts are required to construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), they are, nonetheless, given broad discretion in determining when such complaints are frivolous. Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). A district court is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." Id. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Iqbal, 556 U.S. at 679. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

### B. Paul's Complaint should be barred as untimely.

"Where it is clear from the face of a complaint filed in forma pauperis that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed," pursuant to § 1915(e)(2)(B)). Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994); Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period *sua sponte*. See Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitation for a § 1983 action is the same as the statute of limitations in a personal injury action in the state in

which the claim accrues. Wilson v. Garcia, 471 U.S. 261, 279-80 (1984); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998). Therefore, the Court applies Louisiana Civil Code article 3492, which applies a limitations period of one year. Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989). While the period of limitations is provided by state law, federal law governs the determination of when a § 1983 action accrues. Jacobsen, 133 F.3d at 319. Under federal law, a § 1983 action accrues when plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Helton v. Clements, 832 F.2d 332, 335 (5th Cir. 1987); see also Lavellee v. Listi, 611 F.2d 1129 (5th Cir. 1980).

In this case, absent interruption or tolling of the period of limitations (which is not applicable on the face of the Complaint), Paul's § 1983 claims accrued on approximately July 22-23, 2014. Paul's complaint was filed on July 21, 2017, one day shy of three years after the date of the alleged injury. Paul's § 1983 claims are untimely and barred by the statute of limitations.

The applicable prescriptive period for the cause of action against Cabrini and Dr. Pruett is found at Louisiana Revised Statute § 9:5628. That section, in pertinent part, provides:

> No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest

within a period of three years from the date of the alleged act, omission, or neglect.

La.Rev.Stat. § 9:5628(A).

Thus, there are two prescriptive periods within which to bring a medical malpractice action, one year from the date of the alleged act, omission, or neglect, or one year from the date of discovery. Santiago v. Tulane Univ. Hosp. & Clinic, 115 So. 3d. 675, 681 (La. App. 4 Cir. 4/24/13) (citing La. R.S. 9:5628(A)). The outermost window for filing a malpractice case, regardless of the date of discovery, is three years. Id. "A petition should not be found prescribed on its face if it is brought within one year of the date of discovery and facts alleged with particularity in the petition show that the patient was unaware of the malpractice prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the [plaintiff]." Ferguson v. Sugar, 988 So. 2d 816, 824 (La. App. 4 Cir. 6/25/08) (citing Campo v. Correa, 828 So. 2d 502, 509 (La. 2002).

Paul alleges Dr. Thomas made him an appointment with Mid-State Orthopedic and Sports Medicine for X-rays, approximately 3 weeks after being seen at Cabrini. (Doc. 8). Paul states "[w]hen I had the chance to view their X-rays I knew Cabrini had done an extremely egregious false diagnosis on me." (Doc. 8). Reading the Complaint liberally, it appears that the alleged date of discovery was roughly August 2014. Thus, Paul's medical malpractice claims prescribed in August 2015. Paul's Complaint was not filed until July 21, 2017, and is thus prescribed on its face.

7

### C. Paul fails to state a plausible claim against Defendants.

Under 42 U.S.C. § 1983, a plaintiff may file suit against a person acting under color of state law who has allegedly violated the plaintiff's constitutional rights. 42 U.S.C. § 1983. Section 1983 claims do not provide a remedy against States because (1) States are not "persons" for the purposes of § 1983, and (2) such claims are barred by the Eleventh Amendment, which grants immunity to the States. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989); see Edelman v. Jordan, 415 U.S. 651, 663 (1974). Further, "[a] suit against a state official in his…official capacity in not a suit against an official but rather is a suit against the official's office," and thus is "no different from a suit against the State itself." Will, 491 U.S. at 71. Section 1983 does not provide for a remedy against the state; such an action is barred by the Eleventh Amendment. Young v. Akal, 985 F.Supp.2d 785, 795 (W.D. La. 2013) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Will, 491 U.S. at 71. Paul's claims against State of Louisiana and MRP are barred by the Eleventh Amendment, and should be dismissed. To the extent Paul's claims against Dardene are asserted against him in an official capacity, such claims are barred by the Eleventh Amendment and should be dismissed with prejudice.

To the extent Dardene is sued in his individual capacity, government officials are entitled to qualified immunity for civil damages if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Sheriff's Office Iberia Par., 2009 WL 928080, at *2 (W.D. La. 2009), aff'd sub nom. Hill v. Hebert, 389 Fed.Appx. 414 (5th Cir. 2010) (citing

8

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In other words, qualified immunity is available when a reasonable official would not have known that his actions would violate a constitutional right that was clearly established at the time of the incident. Id.

Qualified immunity is not merely a defense to liability but an immunity from suit. Swint v. Chambers County Comm'n, 514 U.S. 35, 42 (1995). Claims of qualified immunity require a two-step analysis. Hill, 2009 WL 928080, at 3. First, the court must determine whether the plaintiff has alleged that "the officer's conduct violated a constitutional right." Id., (citing Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003)). If there is no constitutional violation, the court's inquiry ends. Id. Paul's Complaint does not set forth any facts that establish a violation of a constitutional right. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Iqbal, 556 U.S. at 679. There are no facts to support the conclusory allegations against Dardene. Paul's claims against Dardene in an individual capacity should be dismissed with prejudice.

A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922, 937 (1982). Purely private conduct, no matter how wrongful, is not within the protective orbit of Section 1983. Shelley v. Kraemer, 334 U.S. 1, 13 (1948). There are no allegations that Cabrini or Dr. Pruett were state actors or that they conspired with a state actor. Thus, Cabrini and Dr. Pruett should be dismissed because they are not state actors.

III. <u>Conclusion</u>

Accordingly,

**IT IS RECOMMENDED** that Paul's § 1983 complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER RECOMMENDED** that Paul's Motion for Extension of Time Without Attorney of Statute of Limitation to Serve (Doc. 5), and Motion Without Attorney to Have USM Serve Complaint and Summons (Doc. 6) be **DISMISSED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

**THUS DONE AND SIGNED** in chambers in Alexandria, Louisiana, this 5th day of December, 2017.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge